IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DIANNA HOGARTH,            )
                           )
            Plaintiff,     )
                           )
    v.                     )
                           ) Civil Action No. 08-135J
MICHAEL J. ASTRUE,         )
COMMISSIONER OF            )
SOCIAL SECURITY,           )
                           )
            Defendant.     )

MEMORANDUM JUDGMENT ORDER

AND NOW, this 16th day of September, 2009, upon due consideration of the parties' cross-motions for summary judgment pursuant to plaintiff's request for review of the decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Title II and Title XVI, respectively, of the Social Security Act ("Act"), IT IS ORDERED that the Commissioner's motion for summary judgment (Document No. 11) be, and the same hereby is, granted and plaintiff's motion for summary judgment (Document No. 9) be, and the same hereby is, denied.

As the factfinder, an Administrative Law Judge ("ALJ") has an obligation to weigh all of the facts and evidence of record and may reject or discount any evidence if the ALJ explains the reasons for doing so. Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999). Where the ALJ's findings of fact are supported by

substantial evidence, a reviewing court is bound by those findings, even if it would have decided the factual inquiry differently. <u>Farqnoli v. Massanari</u>, 247 F.3d 34, 38 (3d Cir. 2001). Moreover, it is well settled that disability is not determined merely by the presence of impairments, but by the effect that those impairments have upon an individual's ability to perform substantial gainful activity. <u>Jones v. Sullivan</u>, 954 F.2d 125, 129 (3d Cir. 1991). These well-established principles preclude a reversal or remand of the ALJ's decision here because the record contains substantial evidence to support the ALJ's findings and conclusions.

Plaintiff filed her applications for DIB and SSI on June 22, 2004, alleging disability beginning December 31, 2002, due to a left knee impairment, asthma, arthritis and degenerative discs. Plaintiff's applications were denied. At plaintiff's request, an ALJ held a hearing on January 11, 2006. On January 24, 2006, the ALJ issued a decision finding that plaintiff is not disabled. The Appeals Council granted plaintiff's request for review and subsequently remanded the case to the ALJ on July 14, 2006.

Pursuant to the Appeals Council's remand order, the ALJ held a second hearing on November 7, 2006. Subsequently, on February 9, 2007, the ALJ again issued a decision finding that plaintiff is not disabled. On April 16, 2008, the Appeals Council denied plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. The instant action followed.

Plaintiff was 54 years old at the time of the ALJ's most

recent decision and is classified as a person closely approaching advanced age under the regulations. 20 C.F.R. §§404.1563(d), 416.963(d). Plaintiff has a high school education. Plaintiff does not have any past relevant work experience, and she has not engaged in substantial gainful activity at any time since her alleged onset date.

After reviewing plaintiff's medical records and hearing testimony from plaintiff and a vocational expert at the hearing, the ALJ concluded that plaintiff is not disabled within the meaning of the Act. The ALJ found that plaintiff suffered from the severe impairments of degenerative disc disease of the cervical spine and left knee chondromalacia. The ALJ determined, however, that plaintiff's impairments, either alone or in combination, did not meet or equal the criteria of any of the listed impairments set forth in Appendix 1 of 20 C.F.R., Subpart P, Regulation No. 4 ("Appendix 1").

The ALJ found that plaintiff retains the residual functional capacity to perform a range of medium work with a number of other limitations. Plaintiff must avoid crawling and climbing ladders, ropes and scaffolds, and she is limited to only occasional work with her head tilted back. In addition, plaintiff is limited to occasional pushing and pulling with the lower left extremity, including the use of pedals that require more than five pounds of pressure to operate. Finally, plaintiff must avoid prolonged exposure to cold temperatures and extreme wetness and humidity (collectively, the "RFC Finding").

Based upon testimony by a vocational expert at the hearing, the ALJ concluded that plaintiff's vocational factors and residual functional capacity enable her to make an adjustment to work that exists in significant numbers in the national economy, such as a third shift floor buffer, cashier and order clerk. Accordingly, the ALJ concluded that plaintiff is not disabled within the meaning of the Act.

The Act defines "disability" as the inability to engage in substantial gainful activity by reason of a physical or mental impairment that can be expected to last for a continuous period of at least twelve months. 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). The impairment or impairments must be so severe that the claimant "is not only unable to do [her] previous work but cannot, considering [her] age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy ...." 42 U.S.C. §§423(d)(2)(A), 1382c(a)(3)(B).

To regularize the adjudicative process, the Commissioner has promulgated regulations that govern the evaluation of disability. 20 C.F.R. §§404.1501-.1598, 416.901-.998. The process is sequential and follows a "set order" of inquiries. 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4). The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether she has a severe impairment; (3) if so, whether her impairment meets or equals the criteria listed in Appendix 1; (4) if not, whether the claimant's impairment prevents her from performing her past relevant work; and (5) if so, whether

- 4 -

the claimant can perform any other work that exists in the national economy, in light of her age, education, work experience and residual functional capacity. Id.; see also Sykes v. Apfel, 228 F.3d 259, 262-63 (3d Cir. 2000). If the claimant is found disabled or not disabled at any step, further inquiry is unnecessary. 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4); see Santise v. Schweiker, 676 F.2d 925, 927 (3d Cir. 1982).

In this case, plaintiff challenges the ALJ's findings at step 5 of the sequential evaluation process. At step 5, the Commissioner must show that there are other jobs that exist in significant numbers in the national economy which the claimant can perform consistent with her age, education, past work experience and residual functional capacity. 20 C.F.R. §§404.1520(g)(1), 416.920(g)(1). Residual functional capacity is defined as that which an individual still is able to do despite the limitations caused by her impairments. 20 C.F.R. §§404.1545(a)(1), 416.945(a)(1); Fargnoli, 247 F.3d at 40. In assessing a claimant's residual functional capacity, the ALJ considers the claimant's ability to meet the physical, mental and other sensory requirements of work. 20 C.F.R. §§404.1545(a)(4), 416.945(a)(4).

Here, plaintiff argues that the ALJ erred at step 5 because: (1) the RFC Finding is not supported by substantial evidence; (2) the ALJ did not properly weigh certain medical opinions; (3) the ALJ did not properly evaluate plaintiff's credibility; (4) the ALJ did not consider the possibility that a "borderline age situation" exists in this case; and (5) the ALJ's decision denying her

benefits was the result of his bias against social security claimants. The court finds that these arguments lack merit for the reasons explained below.

Plaintiff first argues that she is limited to sedentary work because of her left knee impairment. According to plaintiff, the ALJ's RFC Finding that she can perform a range of medium work is not supported by substantial evidence because she cannot perform the standing and walking requirements of such work. Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. 20 C.F.R. §§404.1567(c); 416.967(c). If one can perform medium work, it is presumed she can also perform sedentary and light work. Id. Light and medium work "require[] a good deal of walking or standing." 20 C.F.R. §§404.1567(b); 416.967(b).

Plaintiff's assertion that she is incapable of performing the standing and walking requirements of medium work is not supported by the medical evidence. Dr. Leonard Brody, an orthopaedic specialist who treated plaintiff twice, is the only medical source who suggested plaintiff is restricted to sedentary work, in part because he found she is limited in her ability to stand and walk. As discussed below, Dr. Brody's opinion is not entitled to controlling weight because it is unsupported and contrary to other medical evidence of record.

The ALJ's RFC Finding restricting plaintiff to a range of medium work is supported by substantial evidence. An x-ray of plaintiff's left knee revealed no evidence of fracture,

dislocation or other significant soft tissue abnormality. (R. 396). An initial MRI of plaintiff's left knee indicated that there was no lateral meniscal tear, the cruciate and collateral ligaments were intact, there was no evidence of fracture or bone bruise, and there was no significant joint effusion. (R. 191). A subsequent MRI of plaintiff's left knee showed there was no meniscal tear, the anterior and posterior cruciate ligaments were intact, as were the medial and lateral collateral ligaments. (R. 199). The MRI noted a very small area of chondromalacia, but an otherwise unremarkable study. (R. 199).

In addition to plaintiff's unremarkable X-ray and MRIs, Dr. Christopher Aland, an orthopaedic specialist who treated plaintiff from January 2002 until July 2004, did not indicate in his treatment notes that plaintiff was restricted in her ability to walk or stand such that she would be unable to perform the requirements of medium work. (R. 223-25, 227-31, 233-34). Moreover, Dr. Richard Kaplan, who performed a consultative examination of plaintiff, concluded that plaintiff did not have any limitations in her ability to walk and stand. (R. 562-66). For all of these reasons, the court concludes that the ALJ's RFC Finding limiting plaintiff to a range of medium work is supported by substantial evidence.

Plaintiff next argues that the ALJ gave inadequate weight to the opinion of Dr. Brody, who she characterizes as one of her treating physicians. A treating source is a physician who has an ongoing treatment relationship with the claimant. 20 C.F.R.

%AO 72
(Rev. 8/82)

§§404.1502, 416.902. An ongoing treatment relationship exists where the claimant sees the physician "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the claimant's] medical condition(s)." Id. A physician who has treated a claimant "only a few times" may be considered a treating source "if the nature and frequency of the treatment or evaluation is typical for [the claimant's] condition(s)." Id.

Here, Dr. Brody only treated plaintiff on two occasions. (R. 246, 249, 509). The court cannot say whether Dr. Brody's infrequent treatment of plaintiff was typical for her condition such that he still would be considered a treating physician. However, the court notes that plaintiff treated with Dr. Aland, her prior orthopaedic specialist, more often. (R. 223-25, 227-31, 233-34). Nevertheless, even giving plaintiff the benefit of doubt that Dr. Brody can be considered a treating physician, his opinion concerning her physical limitations is not entitled to controlling weight because it is not well supported by medically acceptable clinical and laboratory diagnostic techniques and it is inconsistent with the other evidence of record. See 20 C.F.R. §§404.1527(d)(2); 419.927(d)(2).

Dr. Brody indicated on a form entitled "Medical Assessment of Ability to do Work-Related Activities" that plaintiff is limited to sedentary work. (R. 570-73). Specifically, concerning plaintiff's knee impairment, Dr. Brody determined that plaintiff can stand and walk two hours in an eight hour workday. (R. 571).

However, Dr. Brody failed to identify any medical findings that supported his assessment despite the fact that the form asked him to do so. Further, Dr. Brody's restrictive assessment of plaintiff's functional capacity is contradicted by her X-ray and MRI results discussed above, as well as Dr. Aland's treatment notes and Dr. Kaplan's consultative examination findings.[1] Accordingly, the ALJ properly gave minimal weight to Dr. Brody's opinion that plaintiff is limited to sedentary work.

The ALJ also correctly concluded that Dr. Brody's opinion in a brief, one-line note that plaintiff needs to use a cane is not entitled to controlling weight. (R. 24, 509). Dr. Brody did not cite any physical examination findings to support his conclusory opinion, nor did he otherwise explain why plaintiff needs to use a cane. (R. 509). Contrary to Dr. Brody's unsupported opinion,

---

[1] Plaintiff asserts that the ALJ should not have relied upon the report of the consultative examiner, Dr. Kaplan, who concluded that plaintiff is not limited in her ability to walk and stand. In support of this assertion, plaintiff suggests that Dr. Kaplan's report raises a question of whether he "even had the opportunity to review the medical evidence" because his report does not discuss any of it. See Plaintiff's Brief in Support of Motion for Summary Judgment (Document No. 10) at 18. A review of Dr. Kaplan's report makes clear that he reviewed the medical evidence in this case. Dr. Kaplan summarized plaintiff's medical history and the results of her MRI, listed her medications, stated that she treated with Dr. Aland and then Dr. Brody, and noted Dr. Brody's interpretation of her MRI results. (R. 562-63). Significantly, Dr. Kaplan then performed his own physical examination of plaintiff and found that there was no ligament instability in her left knee, nor was there any effusion or medial or lateral joint line tenderness. (R. 563). As stated herein, Dr. Kaplan also tested plaintiff's ability to walk both with and without a cane. For these reasons, the ALJ properly considered Dr. Kaplan's report in assessing plaintiff's residual functional capacity and finding her not disabled.

Dr. Kaplan tested plaintiff's ability to walk both with and without a cane. Dr. Kaplan concluded that plaintiff had "a pseudo antalgic gait to the right (i.e. opposite the side of her pain, increasing weightbearing on the left side) using a cane and her gait pattern improved to normal mechanics without the gait aid." (R. 564). For this reason, as well as those discussed above, the ALJ properly assessed Dr. Brody's opinion of plaintiff's capabilities and determined that his opinion was entitled to only minimal weight.

Plaintiff next argues that the ALJ did not properly evaluate her credibility concerning her claimed limitations as a result of her left knee impairment. A claimant's complaints and other subjective symptoms must be supported by objective medical evidence. 20 C.F.R. §§404.1529(c), 416.929(c); Hartranft v. Apfel, 181 F.3d 358, 362 (3d Cir. 1999). An ALJ may reject the claimant's subjective testimony if he does not find it credible so long as he explains why he is rejecting the testimony. Schaudeck v. Commissioner of Social Security, 181 F.3d 429, 433 (3d Cir. 1999). Here, the ALJ thoroughly analyzed plaintiff's subjective complaints, and explained why he found her testimony not entirely credible.

In evaluating plaintiff's credibility, the ALJ complied with the appropriate regulations and considered all of the relevant evidence in the record, including the medical evidence, plaintiff's activities of daily living, plaintiff's medications and the extent of her treatment, plaintiff's own statements about

her symptoms and reports by her treating sources about her symptoms and how they affect her. See 20 C.F.R. §§404.1529(c)(1), 416.929(c)(1); Social Security Ruling 96-7p.

The ALJ also considered the extent to which plaintiff's alleged functional limitations reasonably could be accepted as consistent with the evidence of record and how those limitations affect her ability to work. 20 C.F.R. §§404.1529(c)(4), 416.929(c)(4). The ALJ then determined that plaintiff's subjective allegations regarding her limitations were not entirely credible. (R. 22). This court finds that the ALJ adequately explained the basis for his credibility determination (R. 22-24), and is satisfied that such determination is supported by substantial evidence.

Plaintiff next contends that the ALJ did not consider the possibility that a "borderline age situation" exists in this case. According to plaintiff, the ALJ should have relied on the State Agency examiner's residual functional capacity assessment which indicated that plaintiff can perform light work, even though plaintiff disagrees with that assessment and contends she only can perform sedentary work. According to plaintiff, with a functional capacity for light work, and in consideration of her education and lack of work experience, she should have been found disabled pursuant to the Medical Vocational Guidelines (the "Grids")[2] once

---

[2]The Grids are rules that consider a claimant's age, education, work experience and physical ability and direct a finding of disabled or not disabled based on a combination of those factors.

she turned age 55, which would have been five months after the ALJ's decision. See 20 C.F.R. §202.04. Because plaintiff only was five months short of age 55 when the ALJ made his decision, plaintiff contends that the ALJ should have evaluated her case as a borderline age situation.

With respect to borderline age situations, the regulations provide:

> We will not apply the age categories mechanically in a borderline situation. If you are within a few days to a few months of reaching an older age category, and using the older age category would result in a determination or decision that you are disabled, we will consider whether to use the older age category after evaluating the overall impact of all the factors of your case.

20 C.F.R. §§404.1563(b), 416.963(b).

Plaintiff's borderline age argument has no merit. The State Agency examiner who determined that plaintiff can perform light work was a claims adjudicator, not a physician. (R. 238-44). Thus, the ALJ properly determined that opinion was not entitled to weight as a medical opinion. (R. 25). Further, as discussed above, the ALJ's RFC Finding that plaintiff can perform a range of medium work is supported by substantial evidence. Therefore, even if the ALJ had considered plaintiff in the older age category, he would have applied Grid Rule 203.00(b) and 203.14, which also dictates a finding of not disabled. Since using the older age category would not affect the outcome of the case, it was not necessary to consider whether the older age category should have been applied. Thus, any error in failing to discuss the

borderline age situation was harmless. <u>Rutherford v. Barnhart</u>, 399 F.3d 546, 553 (3d Cir. 2005) (refusing to remand where stricter compliance with a social security ruling would not have changed the outcome of the case).

Plaintiff's final argument is that the ALJ found she was not disabled because he is biased against social security claimants. In support of her bias argument, plaintiff cites the following comments the ALJ made on the National Public Radio blog site called "Marketplace":

> Occasionally-but rarely-do I see a claimant with an entirely fraudulent claim. The clear majority of the claimants who appear before me do have some physical or mental impairment. The real issue is whether that person can meet the definition of "disability" which was intentionally set very high by Congress to provide income to only those whose injuries/illnesses are very debilitating. **Unfortunately, that very high bar is approached with deception and falsification in many cases. Some doctors go overboard on diagnoses and treatment because they sense the "pot of gold" in having a fairly young patient (on Medicare for many years to come) with a reliable source of payment for constant treatment. Lawyers and other non-attorney representative[s] can receive fees as a percentage of the back benefits awarded to a claimant. Once a claimant has a legal representative, one can actually track how the alleged impairments become much worse, with new impairments and symptoms added as the case matures. A judge with some experience can almost recite verbatim the same story we hear from virtually EVERY claimant, suggesting they have received training from the national organization of the claimant's attorneys.** The government is complicit in this boondoggle, because the Social Security Administration actually publishes lists of symptoms for various impairments in the form of rules for judges to follow. Is it any wonder we hear those lists of symptoms at almost every hearing?

<u>See</u> Plaintiff's Brief at 23-24 (emphasis added by plaintiff), quoting, http://marketplace.publicradio.org/display/web/2008/09/04/ss_backlog/.

Due process requires that social security claimants be afforded a full and fair hearing. Ventura v. Shalala, 55 F.3d 900, 902 (3d Cir. 1995). Essential to a fair social security hearing is the right to an unbiased judge who fulfills his duty to develop a full and fair record. Id. An ALJ is presumed to be unbiased unless there is a specific showing for cause to disqualify. Schweiker v. McClure, 456 U.S. 188, 195 (1982). The burden to establish a disqualifying interest rests with the party asserting bias. Id. at 196. A party asserting bias must show that the behavior of the ALJ was "so extreme as to display clear inability to render fair judgment." Liteky v. United States, 510 U.S. 540, 551 (1994).

Plaintiff has not identified any behavior by the ALJ in this case that prevented her from receiving a full and fair hearing or that indicated the ALJ was unable to render a fair judgment. There is no indication that the ALJ failed to fully develop the record, that he questioned plaintiff in a coercive manner, that he interfered with the introduction of evidence concerning plaintiff's claim, or that he made any comments that show he was biased against plaintiff or her particular case. Rather, the general comments about which plaintiff complains were made by the ALJ on a blog site in September 2008, nearly two years after the ALJ held plaintiff's hearing and over a year and a half after he issued his written decision denying her benefits. Clearly, the ALJ's comments were not directed specifically at plaintiff, nor

did they pertain to her case.[3] The court also notes that plaintiff's reference to the ALJ's comments on the blog site made nearly two years after her administrative hearing are not a part of the administrative record in this case and are not properly before this court for review. See Matthews v. Apfel, 239 F.3d 589, 594 (3d Cir. 2001) (holding that evidence that was not before the ALJ cannot be used to argue that the ALJ's decision was not supported by substantial evidence). For all of these reasons, plaintiff has failed to establish that the ALJ was biased against her in conducting the administrative hearing or deciding her case.

After carefully and methodically considering all of the medical evidence of record and plaintiff's testimony, the ALJ determined that plaintiff is not disabled within the meaning of the Act. The ALJ's findings and conclusions are supported by substantial evidence and are not otherwise erroneous. Accordingly, the decision of the Commissioner must be affirmed.

*Gustave Diamond*
Gustave Diamond
United States District Judge

---

[3] The court notes that plaintiff has emphasized the portion of the ALJ's comments concerning his opinion that deception and falsification exists in some cases. The ALJ also clearly stated in his comments that fraudulent claims occur "occasionally-but rarely" and that the majority of claimants he sees have "some physical or mental impairment." Plaintiff fails to acknowledge in her brief that the ALJ's comments in the blog, when read as a whole, indicate a balanced perspective, rather than the biased view that plaintiff attempts to attribute to those comments.

cc: Karl E. Osterhout, Esq.
    1789 South Braddock Avenue
    Suite 570
    Pittsburgh, PA 15218

    John J. Valkovci, Jr.
    Assistant U.S. Attorney
    319 Washington Street
    Room 224, Penn Traffic Building
    Johnstown, PA 15901